1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANVEL TADEVOSYAN,

             Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

No.  2:12-cv-2382-EFB

ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for a period of disability and Disability Insurance

Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

reasons discussed below, the court grants the plaintiff's motion and denies the Commissioner's

motion.

I.     BACKGROUND

      Plaintiff filed applications for a period of disability, DIB, and SSI on February 18, 2009,

alleging that he had been disabled since March 1, 2007.  Administrative Record ("AR") 122-136.

/////

/////

1

Plaintiff's applications were denied initially and upon reconsideration.  *Id.* at 78-81, 87-92.  On September 1, 2010, a hearing was held before administrative law judge ("ALJ") Theodore Slocum.  *Id.* at 31-67.  Plaintiff was represented by a non-attorney at the hearing, at which plaintiff and a Vocational Expert ("VE") testified.  *Id.*

On January 24, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id.* at 12-23.  The ALJ made the following specific findings:

> 1.  The claimant meets the insured status requirement of the Social Security Act through June 30, 2012.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2. The claimant has not engaged in substantial gainful activity since March 1, 2007, the alleged onset date.  (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: congenital exotropia, diabetes with ophthalmic manifestations, anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

* * *

4. At no time relevant did claimant have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity a full range of work at all exertional levels but with the following limitations: postural limitations preclude scaffold/ladder/rope.  Visually claimant has limited depth perception and he cannot do work requiring binocular vision.  He should avoid concentrated exposure to hazards.  However, the claimant is able to meet the basic mental and emotional demands of competitive remunerative unskilled work including the abilities (on a sustained basis) to understand, carry out, and remember simple instructions.  He would be able to make simple work related decisions, respond appropriately to supervision, co-workers and work situations, deal with changes in a routine work setting, however claimant would do best in work settings requiring minimal social interaction.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7. The claimant was born on May 20, 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual
functional capacity, there are jobs that exist in significant numbers in the national
economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969,
and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act,
from March 1, 2007, through the date of this decision (20 CFR 404.1520(g) and
416.920(g)).

*Id.* at 14-23.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 7, and on

July 17, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final

decision of the Commissioner.  *Id.* at 1-5.

II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings

of fact are supported by substantial evidence in the record and the proper legal standards were

applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

*Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are

conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th

Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

4

III.    ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to develop the record, (2) disregarding third-party statements, (3) finding that plaintiff has at least a high school education and the ability to communicate in English, and (4) assessing plaintiff's RFC.

A.    The ALJ Did Not Have a Duty to Further Develop the Record

Plaintiff argues that the ALJ had a duty to further develop the record regarding plaintiff's visual impairment.  ECF No. 16 at 4-6.  In Social Security cases, the claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  However, an ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered."  *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983).  Although this duty is present regardless of whether claimant is represented, the ALJ must be especially diligent in exploring for all the relevant facts when the claimant is unrepresented.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."  *Tonapetyan v. Halter*, 242 F.3d at 1150.  "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

A visual acuity test conducted in February 2009 shows that plaintiff's corrected vision was 20/25 in his right eye and 20/20 in his left eye.  AR 261.  However, on May 19, 2009, plaintiff underwent a complete internal medicine evaluation, which was performed by Dr. Janet O'Brien.  AR 278-285.  As part of the physical examination, Dr. O'Brien performed a Snellen eye exam.  *Id*. at 280.  Without corrective lenses, plaintiff's vision was 20/100 in his right eye, 20/200 in his left eye, and 20/100 with both eyes.  *Id*.  Examination of plaintiff's eye demonstrated an inability to move either eye medically past the midline.  *Id*.  Dr. O'Brien opined that plaintiff may have glaucoma based on his reports of blurry vision and poor performance on

the eye exam.  *Id*. at 284.  She stated that it was unclear how much improvement plaintiff's vision would receive with corrective lenses, but that "[i]f corrected lenses do not improve his vision [assuming maximal effort was made during the visual acuity examination], then his poor vision would constitute a visual impairment.  *Id*.

An ophthalmological examination was performed on October 1, 2009 by Dr. Hillis Warren, a board-certified ophthalmologist.  *Id*. at 380.  Dr. Warren found that plaintiff's corrected visual acuity was 20/30.  *Id*.  Examination of plaintiff's field of vision showed mild to moderate constriction in both eye.  *Id*.  Dr. Warren diagnosed plaintiff with congenital exotropia.  He stated that at any given time plaintiff was only using one of his eyes.  He opined that plaintiff "should be considered as having a moderate visual disability because of the loss of binocular vision and mild depression of his central vision."  *Id*.

The record also contains a Physical Residual Functional Capacity Assessment, completed by Dr. Amon on October 6, 2009.  *Id*. at 383-387.  Based on a review of plaintiff's medical records, Dr. Amon opined that plaintiff had limited depth perception and no ability to perform fine finger manipulation due to loss of binocular vision.  *Id*. at 385.

Plaintiff contends that the assessments provided by Dr. O'Brien and Dr. Warren "are confusing to any nonexpert" and "offer insufficient guidance."  ECF No. 16 at 4.  Plaintiff contends that these confusing and ambiguous assessments triggered the ALJ's duty to further develop the record.  *Id*.  Plaintiff first takes issue with Dr. O'Brien's finding that "[e]xtraocular muscles demonstrate inability to move either eye past the midline."  Plaintiff, without any citation to an acceptable medical source or evidence, speculates that this "seems to mean that [plaintiff] is missing half of his field of vision without moving his head."  *Id*. at 5.  As for Dr. Warren's assessment, plaintiff contends that it contains several descriptions that are ambiguous to any non-expert.  ECF No. 16 at 5.  Plaintiff states that "[t]here is the interesting sentence, 'At any given time the patient is using only one eye at a time.'"  *Id*.  Plaintiff also argues Dr. Warren's assessment is ambiguous because "we don't know what 'mild to moderate' constriction of visual fields means."  ECF No. 16 at 6.

1    It is understandable that plaintiff, as a non-expert in the field of medicine, does not

2    understand the meaning of certain medical findings.  Similarly, the ALJs are not trained

3    physicians and this, of course, is why the Social Security Administration relies on the opinions of

4    medical experts in assessing claims for disability benefits.  That is precisely what the ALJ did in

5    this case.  In assessing plaintiff's visual impairment, the ALJ gave significant weight to the

6    opinions of Dr. Warren and Dr. Amon.  AR 20.  Dr. Amon opined that plaintiff has limited depth

7    perception and no ability to perform fine finger manipulation due to loss of binocular vision.  *Id*.

8    at 385.  This is consistent with Dr. Warren's opinion that plaintiff has a moderate visual disability

9    due to loss of binocular vision and mild depression of his central fields.  *See id.* at 380.  There is

10   nothing ambiguous or inadequate about these opinions.  Plaintiff's argument rests solely on his

11   unsupported speculation that the objective medical evidence may support additional visual

12   limitations.[2]  This speculation, however, is insufficient to show that the record is ambiguous or

13   inadequate.  Accordingly, the ALJ was not under a duty to further develop the record.

14   B.   The ALJ Provided Legally Sufficient Reasons for Disregarding Third-Party

15        Statements.

16   Plaintiff next argues that the ALJ disregarded testimony from plaintiff's daughter, Mariam

17   Tadevosyan, without providing legally sufficient reasons.  ECF No. 16 at 6-7.  Lay testimony as

18   to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he

19   expressly determines to disregard such testimony and gives reasons germane to each witness for

20   doing so.  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  An ALJ must consider this

21   testimony in determining whether a claimant can work.  *Stout v. Comm'r of Soc. Sec. Admin*., 454

22   F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d)(4); *Smolen*, 80 F.3d at 1288.

23   However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate

24   weight it should be given in the light of the other evidence.  To discount the testimony of a lay

25   witness, the ALJ must "give reasons that are germane to each witness."  *Id*. at 1053; *see also*

26   *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [2]  While plaintiff argues that the medical findings seem to indicate that plaintiff is missing
     half his field of vision, plaintiff does not argue that he is actually missing half his field of vision.

1    The ALJ provided the following explanation for why he did not give significant weight to

2    Ms. Tadevosyan's testimony:

> The testimony of claimant's daughter does not establish that the
> claimant is disabled.  Since, she is not medically trained to make
> exacting observations as to dates, frequencies, types, and degrees of
> medical signs and symptoms, or of the frequency or intensity of
> unusual moods or mannerisms, the accuracy of the testimony is
> questionable.  Moreover, by virtue of the relationship as a relative
> of the claimant, the witness cannot be considered a disinterested
> third party witness whose testimony would not tend to be colored
> by affection for the claimant and a natural tendency to agree with
> the symptoms and limitations the claimant alleges.   Most
> importantly, significant weight cannot be given to the witness's
> testimony because it, like the claimant's, is simply not consistent
> with the preponderance of the opinions and observations by medical
> doctors in this case.

11   AR 21.

12    Ms. Tadevosyan did not purport to offer a medical opinion.  Thus, her lack of medical

13   training does not provide a sufficient basis for discrediting her testimony.  She testified as a lay

14   witness, not a medical expert.  While lay witnesses are, by definition, not acceptable medical

15   sources, *see* 20 C.F.R. § 404.1513(d)(4), the Commissioner's regulations, as well as the law of

16   this circuit, require an ALJ to consider lay testimony in reaching a disability determination.  *Stout*

17   *v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R.

18   § 416.913(d)(4); *Smolen*, 80 F.3d at 1288.  Furthermore, the fact that Ms. Tadevosyan is

19   plaintiff's daughter is also not a germane reason for rejecting her testimony.  *See Smolen*, 80 F.3d

20   at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or

21   her testimony.").  Indeed, it is not surprising or unusual that a lay witness have percipient

22   information about a plaintiff's daily activities and functioning would be a family member.

23    However, the ALJ's decision makes clear that the primary reason why Ms. Tadevosyan's

24   opinion was given less weight was because it was inconsistent with the preponderance of medical

25   opinions and the observations by medical sources.  Plaintiff does not dispute that Ms.

26   Tadevosyan's opinion was inconsistent with the medical evidence of record.  Instead, without

27   citation to any authority, plaintiff argues that an "inconsistency with the preponderance of

28   medical opinions, standing alone, does not work to dismiss lay evidence; there is no point in

1   entertaining non-medical evidence if non-medical evidence can be dismissed for this reason

2   alone."  ECF No. 16 at 7.  Plaintiff's legal argument is contrary to Ninth Circuit authority.  *See*

3   *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that inconsistency with

4   medical evidence is a germane reason for discrediting lay witness testimony); *Lewis v. Apfel*, 236

5   F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that

6   it conflicts with medical evidence.")

7       Here, the ALJ relied most heavily on the inconsistency between Ms. Tadevosyan's

8   testimony and the medical evidence in the record and that is a germane reason for discounting lay

9   witness testimony.  Therefore, any reliance on Ms. Tadevosyan's lack of medical training and

10  relationship to plaintiff was harmless.  Accordingly, the ALJ properly discounted Ms.

11  Tadevosyan's testimony.

12      C.      The ALJ Did Not Err in Evaluating Plaintiff's Level of Education and Ability to

13              Communicate in English.

14      Next, plaintiff argues that the ALJ's decision is not supported by substantial evidence

15  because a question posed to the VE, which the ALJ relied on in finding that plaintiff was not

16  disabled, failed to account for plaintiff's inability to communicate in English and the fact that

17  plaintiff has not completed high school.  ECF No. 16 at 7-8.  Hypothetical questions posed to a

18  vocational expert must set out all the substantial, supported limitations and restrictions of the

19  particular claimant.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical

20  does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national

21  economy has no evidentiary value.  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

22  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate

23  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

24  determination must be supported by substantial evidence in the record as a whole.  *Embrey v.*

25  *Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

26      At the fifth step of the sequential evaluation process, the ALJ concluded, without any

27  explanation, that plaintiff has at least a high school education and is able to communicate in

28  English.  AR 22.  This conclusion, however, is contradicted by the ALJ's own step-four findings.

1  At the fourth step, the ALJ stated, "The claimant is a 46-year-old, Armenian male who spoke

2  little English and needed a translator for interpretation.  Educationally, the claimant attended up

3  to 8th grade.  He does not possess a high school diploma, although he has attended some college

4  English courses."  AR 16.  The record reflects that plaintiff's "college English courses" consisted

5  of a single class.  At the September 1, 2010 hearing, the ALJ stated that case records indicated

6  that plaintiff had completed three years of college.  *Id*. at 39.  Plaintiff clarified that he took a

7  single one semester, English as a Second Language ("ESL") class at a community college.  *Id*.  It

8  cannot seriously be disputed that completing this single course is not the equivalent of completing

9  four years of high school.

10  During the hearing, but subsequent to plaintiff's testimony, the ALJ asked the VE to

11  consider a hypothetical individual who possesses the limitations set forth in the ALJ's RFC

12  assessment and assume, among other things, that the person is "evaluated at more than a high

13  school education."  *Id*. at 50.  The ALJ recognized "that [plaintiff's] testimony differs greatly but

14  the state agency evaluated him at 15 years of education; that may or may not be relevant."  *Id*.

15  The ALJ did not pose a hypothetical to the VE based on plaintiff's testimony that he had only

16  completed the 8th grade and one ESL class; testimony the ALJ ultimately relied upon in making

17  his step-four findings.  *See id*. at 16.  Thus, in finding that plaintiff was not disabled, the ALJ

18  relied upon the VE's answer to a hypothetical question involving an individual that had more than

19  a high school level education.

20  Defendant argues that the ALJ properly relied on the VE's response because the evidence

21  in the record supports the finding that plaintiff had at least a high school level education.  ECF

22  No. 17 at 7.  A Medical/Vocational Decision Guide provides that plaintiff has completed 15 years

23  of education.  AR 75.  On his disability report, when asked to provide the highest grade of school

24  completed, plaintiff stated that he had completed 3 years of college.  *Id*. at 164.  Plaintiff's

25  statement that he completed three years of college explains the state agency's finding that he had

26  15 years of education.  However, a post-hearing statement, drafted by plaintiff's non-attorney

27  representative, indicates that plaintiff completed the eighth grade and three years of vocational

28  school.  *Id*. at 229.  At a psychiatric evaluation, plaintiff reported, through an interpreter, that he

10

1   "completed eight years through high school and then an additional 3.5 years in the construction's

2   school." *Id.* at 289. Defendant, citing to these documents, argues that "the record reflects that

3   plaintiff had eight grades of formal schooling plus three to three and one-half years of college or

4   vocational (construction) education." ECF No. 17 at 7. Thus, defendant argues, "[t]his evidence

5   is consistent with the ALJ's findings that he had at least a high school education." *Id.* (citations

6   omitted).

7         The ALJ's decision, however, makes no mention of the three years plaintiff spent in

8   vocation school. Instead, the decision only provides that plaintiff completed the 8th grade and

9   some college English courses. As the ALJ did not find that plaintiff's vocational training was

10   equivalent to completing high school, the court may not now rely on this reasoning to uphold the

11   ALJ's decision.[3] *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (A district court is

12   "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm

13   the decision of an agency on a ground that the agency did not invoke in making its decision.").

14         Defendant's argument also ignores the ALJ's inconsistent findings at the fourth and fifth

15   step. As stated above, the ALJ found at the fourth step that plaintiff had not received a high

16   school diploma, had only finished the 8th grade, and had attended some college courses in

17   English. AR 16. Plaintiff's college course load consisted of a single semester long ESL class.

18   *Id.* at 39. Notwithstanding these findings, at the fifth step the ALJ concluded, without any

19   explanation or discussion of the evidence in the record, that plaintiff has at least a high school

20   education. *Id.* at 22.

21         Furthermore, statements made by the ALJ at the September 1, 2010 hearing do not rectify

22   the inconsistency. At the hearing, the ALJ specifically stated that plaintiff's assessed educational

23   level—more than a high school education—was based on the state agency's evaluation, which the

24   ALJ conceded may or may not be relevant. AR 50. The ALJ's decision, however, does not

---

25         [3] Even if the court were permitted to reweigh the evidence, the record is inadequate to
26   support a finding that plaintiff's vocational training exceeded the education one would receive in
high school. Aside from a medical assessment indicating that the vocational program involved
27   construction, *see* AR 289, the record contains no specifics regarding the vocational program.
Further, there is no indication that plaintiff's three years of vocational training resulted in a
28   certificate, degree, or license, or that plaintiff even successfully completed his courses.

reference the state agency's finding.  Instead, the decision only discusses plaintiff's testimony that he did not have a diploma, only completed the 8th grade, and had taken an ESL course.  *Id.* at 16.  Thus, it appears that the state agency's evaluation was not relevant.  Based on the foregoing, the court therefore finds that the ALJ's finding that plaintiff completed at least a high school education is not supported by substantial evidence in the record.

The court is also left to guess how the ALJ concluded that plaintiff maintains the ability to communicate in English.  In his decision, the ALJ observed that plaintiff only spoke a little English and that he required an interpreter for translation.  *Id.* at 16.  Aside from these observations, the decision contains no discussion concerning plaintiff's ability to communicate in English.  Defendant contends, however, that there is evidence in the record that supports the finding that plaintiff maintains the ability, at least to some degree, to communicate in English.  ECF No. 17 at 5.  Defendant again cites to evidence not discussed by the ALJ in considering plaintiff's ability to communicate in English.  Moreover, defendant ignores evidence in the record indicating that the ALJ believed plaintiff's English was limited, which contradicts the written finding at step five.

At the hearing, the ALJ posed a single hypothetical question to the VE.  The ALJ stated that he was going to limit the hypothetical individual to performing simple repetitive tasks due to plaintiff's "non-English speaking ability."  AR 52.  However, it is not clear from the ALJ's decision whether plaintiff's "non-English speaking ability" impairs his ability to perform simple repetitive tasks.  *See Mui Si Voong v. Astrue*, 641 F. Supp. 2d 996, (E.D. Cal. 2009) (remanding the case for further consideration because the hypothetical relied upon by the ALJ did not account for plaintiff's need for an interpreter to explain instruction on how to perform one- to three-step commands).

The ALJ's conclusion at step five that plaintiff has at least a high school education and the ability to communicate in English is contrary to the ALJ's other findings.  Consequently, the court cannot find that the hypothetical posed to the VE, which the ALJ relied upon in making his decision, adequately represented all of plaintiff's impairments.  The matter must therefore be

/////

remanded to allow the ALJ to fully explain his findings and resolve the inconsistencies in his decision.[4]

IV.     <u>CONCLUSION</u>

The ALJ decision is not supported by substantial evidence.  Therefore, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment is granted;

2.  The Commissioner's cross-motion for summary judgment is denied;

3.  The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED:  March 31, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

_____

[4]  As the matter must be remanded on this basis, the court declines to address plaintiff's additional argument.

13